UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JAN -8 PM 4: 13

CLERK

BY _____

DEPUTY CLERK

DERREK LEUTE,                )
                            )
    Plaintiff,              )
                            )
    v.                      )        Case No. 2:25-cv-00656-cr
                            )
INTERNATIONAL BUSINESS MACHINES  )
CORPORATION,                )
                            )
    Defendant.             )

**ENTRY ORDER**
**GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS AND**
**GRANTING PLAINTIFF LEAVE TO AMEND**
(Doc. 13)

On June 10, 2025, Derrek Leute ("Plaintiff") filed suit against International Business Machines Corporation ("IBM" or "Defendant") in the Vermont Superior Court, Washington Unit, and on July 17, 2025, Defendant removed the action to this court on the basis of federal question and diversity jurisdiction. Plaintiff asserts four causes of action against Defendant: Violation of Vermont's Fair Employment Practices Act ("VFEPA") (Count I), Violation of the Americans With Disabilities Act (Count II), Violation of Section 504 of the Rehabilitation Act (Count III), and Unlawful Termination in Violation of Public Policy (Count IV). On August 19, 2025, Defendant filed a partial motion to dismiss, seeking dismissal of Counts III and IV. (Doc. 13.) On September 11, 2025, Plaintiff opposed the motion, (Doc. 14), and Defendant filed a reply on September 25, 2025. (Doc. 15.)

Plaintiff is represented by Zachary D. Hozid, Esq. Defendant is represented by John D. Prendergast, Esq., and Ashley R. Theodore, Esq.

## I.    Allegations in the Complaint.

Plaintiff was allegedly hired "in or around 2015 by IBM as a [s]oftware [e]ngineer[]" and "was qualified and proficient" in this position and was not subject to any disciplinary actions. (Doc. 5 at 2, ¶¶ 6, 8.) After several years of working for Defendant, Plaintiff contends that "[w]ithout warning or justification, Plaintiff, and several other employees at IBM, were transferred to a new team in January 2023, where he was suddenly working in sales." *Id.* at ¶ 9. Plaintiff claims he "had no prior training or experience in sales[]" and "did not request such a transfer[]" and "Defendant did not ask Plaintiff if he wanted such a transfer." *Id.* at ¶ 10. Plaintiff asserts that he requested training and direction for his new position but Defendant did not provide training, technical assistance, or other guidance or communicate expectations for his sales role.

Plaintiff allegedly has a developmental disability "that affects his ability to interact with people, engage and understand social interactions, and to process stress and anxiety[,]" *id.* at ¶ 7, and as a result, he struggled in the sales position. In or about June 2023, Plaintiff alleges that he did not meet his sales quota and Defendant subsequently placed him on a "Seller Performance Plan[.]" *Id.* at ¶ 12. Plaintiff claims that he "learned that as of July 1, 2023, there was likely no way for him to meet his sales quota by the end of year because his assigned clients were mostly governmental clients that did not purchase much in the third and fourth quarters of the year." *Id.* at 3, ¶ 17. Although Plaintiff does not allege that he disclosed his disability to Defendant, he asserts, "[o]n information and belief, by June 2023, Plaintiff's supervisors and IBM Human Resources[] were aware that [he] had a disability affecting [his] abilities to engage in social interactions and handle stress, including engaging in sales[-]related tasks." (Doc. 5 at 3, ¶ 14.)

In September 2023, "Plaintiff requested, and was provided by [Defendant], short-term disability because the increased stress and anxiety triggered his disability." *Id.* at ¶ 18. Although Plaintiff alleges that he "remained out of work on short-term disability until early February[] 2024[,]" "[i]n December 2023, [he] submitted a written request for reasonable accommodations for his disability[,]" including "request[ing] a transfer to a

2

position similar to his prior role as a software engineer." *Id.* at ¶¶ 19-20. Plaintiff claims
that "such a job was available, and a manager within IBM had expressed an interest in
Plaintiff joining that team as a software engineer or similar role." *Id.* at ¶ 21. On January
17, 2024, Defendant allegedly informed Plaintiff that his accommodation request was
denied because "the requested accommodation is inconsistent with IBM's human
resources policies governing PIPs, managerial assignments, and position transfers[]" and
informed Plaintiff that he was being placed on unpaid leave for a week. *Id.* at 4, ¶ 22
(internal quotation marks omitted).

Thereafter, "Plaintiff expressed to Defendant, upon receiving the denial of his
reasonable accommodation request, his continued to request for disability
accommodations. He also let Defendant[] know that the additional pressure on him in
sales was causing him significant stress and hardship." *Id.* at ¶ 27. Plaintiff alleges that,
upon information and belief, Defendant made no attempt to analyze the availability of
reasonable accommodations, and in February 2024, Defendant terminated Plaintiff's
employment.

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a
complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Parties must allege sufficient facts
to "nudge[ ] their claims across the line from conceivable to plausible[.]" *Twombly*, 550
U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-
pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal
quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal
conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by

3

mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a party will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

> **B.    Whether Plaintiff's Violation of Section 504 of the Rehabilitation Act Claim Should Be Dismissed (Count III).**

The Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" from discriminating against an individual "solely by reason of her or his disability[.]" 29 U.S.C. § 794(a). 28 C.F.R. § 41.3(e) defines "Federal financial assistance" under Section 504 of the Rehabilitation Act as follows:

> [A]ny grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the agency provides or otherwise makes available assistance in the form of:
>
> > (1) Funds;
> >
> > (2) Services of Federal personnel; or
> >
> > (3) Real and personal property or any interest in or use of such property, including:
> >
> > > (i) Transfers or leases of such property for less than fair market value or for reduced consideration; and
> > >
> > > (ii) Proceeds from a subsequent transfer or lease of such property if the Federal share of its fair market value is not returned to the Federal Government.

28 C.F.R. § 41.3(e).

In its motion to dismiss, Defendant contends that it only receives government procurement contracts, "where the federal government pays fair market value for goods or services[,]" (Doc. 13-1 at 3), which does not constitute "Federal financial assistance" under 29 U.S.C. § 794(a). However, this fact is not contained in the Complaint, and Defendant does not seek judicial notice of it under Fed. R. Evid. 201. As a result, the court cannot consider it in ruling on Defendant's motion to dismiss. *See United States ex*

*rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021) ("A district court . . . 'errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.'") (citation omitted).

In his Complaint, Plaintiff alleges that "[o]n information and belief, Defendant receives federal funding." (Doc. 5 at 6, ¶ 48.) With respect to pleading upon information and belief, the Second Circuit has instructed:

> A litigant cannot merely plop "upon information and belief" in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when "the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."

*Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018) (citation omitted).

In this case, facts about Defendant's alleged federal funding are not solely within the possession or control of Defendant because information about the government's contracts with business entities is generally publicly available. *See Panther Sys. II, Ltd. v. Panther Comput. Sys., Inc.*, 783 F. Supp. 53, 69 (E.D.N.Y. 1991) ("The award of a contract by a public entity through a public bid is a matter of public record."). Notwithstanding the availability of public information, Plaintiff's assertion that Defendant receives "federal funding" is bereft of facts that would support such an inference. *See Dana v. Baker Hughes, Inc.*, 2015 WL 1932086, at *3 (M.D. Pa. Apr. 28, 2015) (dismissing the plaintiff's Rehabilitation Act claim because the complaint "avers upon information and belief[] that the [d]efendant is a recipient of federal funding and provides no other facts to support this allegation[]"). Although Plaintiff argues that "[w]hether financial payment may be deemed a government subsidy or mere compensation for services . . . is a complex question that depends on the particular facts and circumstances of the contract and project at issue[,]" *Alfano v. Bridgeport Airport Servs., Inc.*, 373 F. Supp. 2d 1, 6 (D. Conn. 2005), Plaintiff must nonetheless plausibly plead that Defendant receives "Federal financial assistance[,]" 29 U.S.C. § 794(a), to survive a motion to dismiss. *See, e.g., Davis v. Winston Preparatory Sch.*, 2025 WL

1795350, at *17 (S.D.N.Y. June 30, 2025) ("Because the [a]mended [c]omplaint does not plausibly allege that [the defendant] was receiving Federal funding as of the time of the alleged discriminatory action, Plaintiff's . . . Rehabilitation Act claim[] will be dismissed.").

Because Plaintiff's conclusory allegation regarding "federal funding" is insufficient to plausibly allege that Defendant receives "Federal financial assistance[,]" as required for a claim under Section 504 of the Rehabilitation Act,[1] the claim must be DISMISSED.

### C.    Whether Plaintiff's Unlawful Termination in Violation of Public Policy Claim Should Be Dismissed (Count IV).

#### 1.    Preemption.

Defendant argues that Plaintiff's unlawful termination claim must be dismissed because it is "based solely on alleged disability discrimination[]" and thus preempted by VFEPA. (Doc. 13-1 at 3) (citation omitted). In response, Plaintiff concedes "that common law claims based on allegations of disability discrimination are preempted by [VFEPA][]" but contends that his unlawful termination claim is "a distinct claim based on broader factual allegations[]" and is not duplicative of his VFEPA claim. (Doc. 14 at 3-4.)

"Under Vermont law, where a statute creates a right or remedy unknown at common law, the statutory remedy preempts a common law cause of action." *Decker v. Vermont Educ. Television, Inc.*, 13 F. Supp. 2d 569, 573 (D. Vt. 1998) (citations omitted). To the extent that Plaintiff's unlawful termination claim is based upon assertions of disability discrimination, it is therefore preempted. *See id.*; *see also Connolly v.*

---

[1] *See Sos v. Mack Trucks, Inc.*, 1991 WL 64596, at *5 (E.D. Pa. Apr. 23, 1991) (dismissing the plaintiff's Rehabilitation Act claim because "the plaintiff has offered no evidence that [the defendant] has any links with federal funding which would bring it within the scope of the Act[]"), *aff'd*, 950 F.2d 723 (3d Cir. 1991); *Hunt v. Univ. of Pittsburgh Med. Ctr., Pinnacle*, 2019 WL 3776545, at *5 & n.8 (M.D. Pa. Aug. 12, 2019) (dismissing the plaintiff's Rehabilitation Act claim because the complaint's assertion that "[the defendant] receives federal financial assistance and as such is subject to Section 504[]" was conclusory and did not "support a plausible inference that [d]efendant is a 'recipient of federal financial assistance'").

*Alderman*, 2018 WL 1136598, at *3 (D. Vt. Mar. 1, 2018) ("To the extent that [the p]laintiff's common law claims . . . are based upon assertions of retaliatory discharge and workplace sexual harassment, they are preempted by the VFEPA, which provides a statutory remedy for such conduct.") (citation omitted). However, because Plaintiff's unlawful termination claim does not entirely rest on allegations of disability discrimination and incorporates broader allegations that Defendant did not provide Plaintiff with training or guidance nor communicate expectations for his sales position and then terminated him, his claim is not entirely preempted. *See Decker*, 13 F. Supp. 2d at 573.

For the reasons stated above, Plaintiff's unlawful termination claim, to the extent it rests on assertions of disability discrimination, is preempted by VFEPA and is DISMISSED.

## 2. Clear and Compelling Public Policy.

Defendant argues that Plaintiff's unlawful termination claim also "fails as a matter of law" because it rests on "the purportedly 'cruel or shocking' nature of IBM's conduct," when "Vermont does not recognize a public policy exception to at-will employment based on such allegations absent a clear and compelling public policy, and Plaintiff has failed to allege violation of a clear and compelling public policy." (Doc. 15 at 3-4.) Under Vermont law, "[a]n at-will employee may be fired for any reason 'unless there is a clear and compelling public policy against the reason advanced for the discharge.'" *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 26, 214 Vt. 269, 280, 256 A.3d 604, 613 (quoting *Payne v. Rozendaal*, 520 A.2d 586, 588 (Vt. 1986)).

"When a course of conduct is cruel or shocking to the average [person]'s conception of justice, such course of conduct must be held to be obviously contrary to public policy[.]" *Payne*, 520 A.2d at 588. As a result, "[a]n employee seeking to invoke the public[]policy exception to at-will employment must demonstrate that her employer's conduct was cruel or shocking to the average person's conception of justice." *Boynton v.*

7

*ClearChoiceMD, MSO, LLC*, 2019 VT 49, ¶ 8, 210 Vt. 454, 459, 216 A.3d 1243, 1247 (alteration adopted) (internal quotation marks and citations omitted).

"[P]ublic policy restraints . . . are enforced to protect community norms for the benefit of the public at large, as well as the individual employee." *LoPresti v. Rutland Reg'l Health Servs., Inc.*, 2004 VT 105, ¶ 20, 177 Vt. 316, 326, 865 A.2d 1102, 1111 (citation omitted). "[P]ublic policy may be said to be the community common sense and common conscience, extended and applied throughout the state to matters of public morals, public health, public safety, public welfare, and the like." *Payne*, 520 A.2d at 588 (alteration adopted) (citation omitted). "On the other hand, . . . purely private concerns do not implicate public policy." *Pettersen*, 2021 VT at ¶ 28, 214 Vt. at 282, 256 A.3d at 614 (citation omitted). Accordingly, even when a plaintiff asserts a claim of unlawful termination based on the cruel or shocking nature of a defendant's conduct, the allegations cannot pertain only to the plaintiff's private concerns.[2]

In his Complaint, Plaintiff alleges that Defendant transferred him to a sales position even though he had worked as a software engineer for eight years. In his new

---

[2] *See, e.g., Boynton v. ClearChoiceMD, MSO, LLC*, 2019 VT 49, ¶ 10, 210 Vt. 454, 460-61, 216 A.3d 1243, 1249 (affirming trial court's dismissal of plaintiff's unlawful termination claim and finding plaintiff's allegations did not plausibly allege that defendant's conduct was cruel or shocking to average person's conception of justice because plaintiff asserted that coworker's comment caused her personal injury, and "plaintiff's moral objection to the alleged comment is insufficient to state a claim that her report was protected by public policy[]"); *see also Jobber v. Plumrose USA, Inc.*, 2021 WL 2322424, at *10 (D. Vt. June 7, 2021) (granting summary judgment for defendant on plaintiff's unlawful termination claim because even though plaintiff claimed his treatment was cruel or shocking to the average person's conception of justice, "[t]his case carries no [] broad policy concerns[]" as "[plaintiff] was an at-will employee who was discharged for poor performance[]"); *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 29, 214 Vt. 269, 282, 256 A.3d 604, 614 (affirming trial court's grant of summary judgment for defendant on plaintiff's unlawful termination claim because defendant's decision to terminate plaintiff after plaintiff threatened to sue "does not implicate any public concern[]"); *Madden v. Omega Optical, Inc.*, 683 A.2d 386, 391 (Vt. 1996) (affirming trial court's grant of summary judgment for defendant on plaintiff's unlawful termination claim because "[t]he termination of an employee who refused to sign a[] . . . noncompetition agreement is not so contrary to our society's concern for providing equity and justice that it violates clear and compelling public policy and is not a course of conduct that is cruel or shocking to the average [person]'s conception of justice[]") (alteration adopted) (internal quotation marks and citations omitted).

position, Defendant allegedly provided no guidance, training, or other assistance and refused to investigate and implement reasonable accommodations, which Plaintiff claims "shocks the conception of justice." (Doc. 5 at 8, ¶ 67.) Plaintiff claims Defendant's conduct caused him to receive "hostility from managers and human resources [that] was 'triggering' [to] him" and caused him to suffer "stress and anxiety[.]" *Id.* at ¶¶ 65-66.

Because Plaintiff's allegations describe purely private concerns, Plaintiff fails to state a plausible claim for unlawful termination in violation of a clear and compelling public policy. *See Boynton*, 2019 VT at ¶ 10, 210 Vt. at 460-61, 216 A.3d at 1248-49.

For the foregoing reasons, Plaintiff's unlawful termination in violation of public policy claim is DISMISSED.

### D.    Whether Plaintiff Should Be Granted Leave to Amend.

Pursuant to Fed. R. Civ. P. 15(a)(2), courts "should freely give leave" to amend a complaint "when justice so requires." "Leave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). In this matter, there is no apparent good reason to deny leave. Plaintiff is therefore GRANTED leave to amend and may submit an Amended Complaint within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

### CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's partial motion to dismiss, (Doc. 13), and GRANTS Plaintiff leave to amend.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __8ᵗʰ__ day of January, 2026.

Christina Reiss, Chief Judge
United States District Court